# Supreme Court of Texas

No. 23-0875

Cindy Thompson, Individually and as Heir of Charles Thompson, and CC & T Investments, LLC,

*Petitioners*,

v.

Mae Landry,

*Respondent*

On Petition for Review from the
Court of Appeals for the First District of Texas

**Argued January 16, 2025**

JUSTICE BLAND delivered the opinion of the Court.

More than a decade after a default judgment foreclosed longstanding tax liens, the property owner sued to collaterally attack that judgment and void a subsequent purchaser's deed. Relying on our decision in *Mitchell v. MAP Resources, Inc.*,[1] the owner claims the default judgment violates her due process rights because the taxing

---

[1] 649 S.W.3d 180 (Tex. 2022).

authorities failed to properly serve her with suit papers, leading to foreclosure of the liens.

The subsequent purchaser of the property—who paid the judgment—counters that the owner had notice of the property's sale years before she brought her collateral attack. On cross-motions for summary judgment, the trial court sustained the collateral attack, setting aside the default judgment and tax sale. The court of appeals reversed, holding that fact issues exist regarding the adequacy of service in the underlying tax suit.

The subsequent purchaser petitioned for review, urging that the owner's notice of the property's sale years earlier defeats her claim as a matter of law. We agree with the purchaser that a property owner may not set aside a subsequent property purchase on due process grounds if the owner obtained notice of the default judgment or the property's sale during the statutory limitations and redemption period. Such an owner has notice of any due process violation in time to assert a legal remedy. Further, a subsequent purchaser may advance equitable defenses against a collateral attack if a prior owner unreasonably delays, to the current owner's detriment, in suing to quiet title after obtaining notice of the judgment or the property's sale. The evidence in this case, however, fails to conclusively demonstrate the date of such notice. Accordingly, we affirm the judgment of the court of appeals and remand the case to the trial court for further proceedings.

## I

Respondent Mae Landry inherited her grandmother's partial interest in a nearly twelve-acre property in Chambers County. In

2

February 2004, taxing authorities sued to foreclose unpaid tax liens on the property dating back more than a decade.[2] The authorities served Landry's grandmother—who was listed as the record owner—by publication, posting the suit on the courthouse door.[3] When Landry did not answer the suit, the trial court rendered a default judgment awarding delinquent taxes and related fees on May 9, 2005.

In December 2006, Petitioner Cindy Thompson purchased the property at a tax foreclosure sale and paid the outstanding tax liens on the property. The taxing authorities issued Thompson a constable's deed on February 6, 2007. The deed was recorded three days later on February 9. Thompson has paid the taxes on the property since that time.

During these events, Landry and her husband resided in a mobile home on a portion of the property. Landry was born in a different house on the property and has lived on the land all her life. When Landry's grandmother died in the 1980s, the interest in the property passed to Landry, though she was never named as the record owner of the property. In 2009, Landry's husband leased the property containing the home from Thompson's husband. The Landrys paid rent and continued to live in the home.

---

[2] The tax suit was styled *Chambers County et al. v. Ford et al.*, No. CV21042, in the 344th District Court of Chambers County, Texas.

[3] The taxing authority also served by publication at least ten others with an interest in the same property. The parties dispute whether one landowner was personally served.

In January 2016, the Thompsons sought to evict the Landrys.[4] Landry obtained a temporary restraining order to stop the eviction. She then attempted to intervene in the tax suit to set aside the May 2005 default judgment. The trial court granted relief, but the court of appeals directed the trial court to vacate its order as the trial court's power to modify the judgment had expired.[5]

In June 2018, more than ten years after the sale, Landry sued Thompson, seeking to set aside Thompson's purchase of the property. Landry claimed that service of citation by publication on her grandmother in the tax suit violated Landry's right to procedural due process. Thompson moved for summary judgment, arguing that the Tax Code's limitations period bars this suit. In addition, Thompson raised laches and estoppel as equitable defenses. Landry filed a cross-motion, arguing that the taxing authorities' improper service in the tax suit violated due process, voiding both the judgment and the subsequent tax sale. The trial court granted Landry's motion and denied Thompson's. It declared the 2005 default judgment void and awarded title to Landry.

The court of appeals reversed and remanded, holding that fact issues exist as to whether the taxing authorities' citation by publication in the tax suit violated due process.[6] The court went on to hold, however,

---

[4] Landry's testimony suggests that this was the second eviction attempt. The first notice was served in 2015 and dismissed by the justice court.

[5] *In re Thompson*, 569 S.W.3d 169, 172–75 (Tex. App.—Houston [1st Dist.] 2018, orig. proceeding).

[6] 704 S.W.3d 21, 37 (Tex. App.—Houston [1st Dist.] 2023).

that *Mitchell* precluded Thompson's limitations defense, and that Thompson did not conclusively establish any equitable defense.[7]

Landry does not challenge the court of appeals' holding that fact issues exist as to the efficacy of the service of process in the tax suit. Thus, the court of appeals' reversal of her motion for summary judgment is not before our Court. Thompson, however, challenges the denial of her motions for summary judgment on limitations and her equitable defenses, which she contends bar Landry's suit as a matter of law. We review a trial court's rulings on the parties' cross-motions for summary judgment de novo, considering both sides' evidence, determining all questions presented, and rendering the judgment the trial court should have rendered.[8]

## II

Texas Rule of Civil Procedure 117a governs service of citation in delinquent-tax suits.[9] Rule 117a requires personal service of citation on Texas residents.[10] However, if a plaintiff cannot obtain the defendant's name and residence through diligent inquiry, then Rule 117a(3) permits

---

[7] *Id.* at 36.

[8] *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Mitchell*, 649 S.W.3d at 188.

[9] Tex. R. Civ. P. 117a ("In all suits for collection of delinquent ad valorem taxes, the rules of civil procedure governing issuance and service of citation shall control the issuance and service of citation therein, except as herein otherwise specially provided.").

[10] *Id.* R. 117a(1) ("Where any defendant in a tax suit is a resident of the State of Texas and is not subject to citation by publication under subdivision 3 below, the process shall conform substantially to the form hereinafter set out for personal service . . . .").

alternative service by publication.[11] Publication can occur either through classified advertising or, if not available, through posting on the courthouse door.[12]

Under the rule, taxing authorities must not resort to substituted service when reasonable diligence will provide the information necessary to accomplish personal service.[13] Under Tax Code Section 33.54, a defaulting owner of a homestead must bring suit against a subsequent purchaser to challenge the sale within two years after the deed is filed in the real property records.[14] A property owner may also redeem the property within the same two-year period by

---

[11] *Id.* R. 117a(3) (permitting publication "[w]here . . . the name or the residence of any owner of any interest in any property upon which a tax lien is sought to be foreclosed, is unknown to the attorney requesting the issuance of process or filing the suit for the taxing unit, and such attorney shall make affidavit that . . . the name or residence of such owner is unknown and cannot be ascertained after diligent inquiry").

[12] *Id.* ("The citation shall be published in the English language one time a week for two weeks in some newspaper published in the county in which the property is located . . . . If there is no newspaper published in the county, then the publication may be made in a newspaper in an adjoining county . . . . The maximum fee for publishing the citation shall be the lowest published word or line rate of that newspaper for classified advertising. If the publication of the citation cannot be had for this fee, . . . then service of the citation may be made by posting a copy at the courthouse door of the county in which the suit is pending . . . .").

[13] *Sgitcovich v. Sgitcovich*, 241 S.W.2d 142, 147 (Tex. 1951).

[14] Tex. Tax Code § 33.54(a) (providing an "action relating to the title to property may not be maintained against the purchaser of the property at a tax sale unless the action is commenced" before the "second anniversary of the date that the deed executed to the purchaser is filed of record, if on the date that the suit to collect the delinquent tax was filed the property was" the owner's residence homestead).

paying the subsequent purchaser the amount paid for the property.[15] In *Mitchell*, we held that an owner who failed to receive notice that comports with due process may bring an action to collaterally attack a tax default judgment outside the limitations period because such a failure voids the judgment.[16]

### III

This case presents questions we did not address in *Mitchell*. First, may a subsequent purchaser raise the former owner's notice of the default judgment or property sale within the limitations period as a defense? Second, may a subsequent purchaser raise an equitable defense to an action to set aside the property sale based on unreasonable delay after obtaining notice of the judgment or sale? Thompson claims that Landry had notice of the sale of the property within the limitations period and thus Landry's suit to void Thompson's property deed must fail. The court of appeals disregarded this defense, holding Landry's claim to be completely "independent" of the statutory limitations period.[17]

### A

At play in this lawsuit are two kinds of notice. The first kind is whether the taxing authorities gave proper notice in serving Landry's

---

[15] *Id.* § 34.21(a) ("The owner of real property sold at a tax sale to a purchaser other than a taxing unit that was used as the residence homestead of the owner . . . may redeem the property on or before the second anniversary of the date on which the purchaser's deed is filed for record by paying the purchaser the amount the purchaser bid for the property . . . .").

[16] 649 S.W.3d at 194.

[17] 704 S.W.3d at 33.

7

grandmother with the suit to foreclose the outstanding tax liens. Notice of a lawsuit is an elementary requirement of constitutional due process.[18] Thus, when the government seizes property to satisfy a debt, it must provide the owner with "notice and opportunity for hearing appropriate to the nature of the case."[19] While actual notice is preferable for foreclosure of a property interest, constructive notice may suffice upon a showing that personal service is not reasonably available.[20] If a taxing authority cannot reasonably identify a property owner's name and location to obtain personal service, then constructive notice such as citation by posting satisfies due process.[21]

In *Mitchell*, we examined diligent inquiry as a necessary prerequisite for citation by publication to satisfy due process.[22] There,

---

[18] *B. Gregg Price, P.C. v. Series 1 – Virage Master LP*, 661 S.W.3d 419, 422 (Tex. 2023); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

[19] *Gill v. Hill*, 688 S.W.3d 863, 867 (Tex. 2024) (quoting *Jones v. Flowers*, 547 U.S. 220, 223 (2006)).

[20] *Id.* at 868; *see also Dusenbery v. United States*, 534 U.S. 161, 170 (2002) (explaining that "the Due Process Clause does not require . . . heroic efforts by the Government" to ensure notice); *Mullane*, 339 U.S. at 315 ("The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.").

[21] *Mitchell*, 649 S.W.3d at 190; *see also In re E.R.*, 385 S.W.3d 552, 559 (Tex. 2012) ("For missing or unknown persons, service by . . . 'indirect and even . . . probably futile' means did not raise due process concerns." (quoting *Mullane*, 339 U.S. at 317)).

[22] 649 S.W.3d at 191. Citation by publication or posting violates due process when the address of a known defendant is readily ascertainable from public records that someone who actually wants to find the defendant would search. *Id.* at 190; *E.R.*, 385 S.W.3d at 564 (explaining that a reasonable search

8

the heirs of an original owner of mineral interests in real property sued subsequent tax-sale purchasers of those interests, seeking to void a tax foreclosure judgment against them.[23] As with Landry's grandmother, the taxing authorities served the *Mitchell* plaintiffs by publication, posting notice of the suit on the courthouse door.[24] The record, however, contained no evidence of the attempts to locate those defendants, and some evidence countered a conclusory statement in an affidavit that such efforts were made.[25] In concluding that the taxing authorities' service was inadequate, we held that a "complete failure of service deprives a litigant of due process and a trial court of personal jurisdiction; the resulting judgment is void and may be challenged at any time."[26]

In this case, the court of appeals held that fact issues exist regarding whether the taxing authorities' service efforts were reasonably diligent so as to satisfy due process.[27] Landry did not file a cross-petition in this Court to seek reinstatement of the trial court's summary judgment in her favor.[28] Accordingly, the issue of whether

---

"must include inquiries that someone who really wants to find the defendant would make").

[23] *Mitchell*, 649 S.W.3d at 183–84.

[24] *Id.* at 184.

[25] *Id.* at 185–86.

[26] *Id.* at 194 (quoting *E.R.*, 385 S.W.3d at 566).

[27] 704 S.W.3d at 34–35.

[28] Tex. R. App. P. 53.1 ("A party who seeks to alter the court of appeals' judgment must file a petition for review.").

Landry has established a due process violation in the underlying tax case of the sort recognized in *Mitchell* remains for further proceedings in the trial court.

## B

The second kind of notice at play in cases like this one is notice of the due process violation itself. While a constitutionally infirm default judgment is void, the remedy sought here and in similar cases is not merely to declare the judgment void. It is also to set aside a subsequent sale and void the subsequent purchaser's real property deed. The owner challenges not only the default judgment but also the sale to a purchaser who was not a party to any due process violation. When an owner—or the owner's successor—obtains notice of the sale of the property interest, it affects a court's power to void the deed and quiet title in favor of the of the previous owner.

By statute, an owner who loses her homestead property through a sale premised on a constitutionally infirm default judgment has two years from the time the constable's deed is recorded to redeem the property or sue to regain title to the property deeded to a subsequent purchaser.[29] Actual notice of divestment within the limitations period affords a party aggrieved by a due process violation the opportunity to remedy the harm caused by a sale that relied on a void judgment. So long as the party has an adequate remedy at law, due process does not

---

[29] Tex. Tax Code §§ 33.54, 34.21(a).

demand equity to intervene in allowing a remedy against the subsequent purchaser.[30]

*Mitchell* did not address the effect of this kind of notice because the record was "devoid of information regarding how and when [the plaintiffs] learned of the judgment."[31] The court of appeals in this case, however, incorrectly characterized the limitations provision as "irrelevant" when an owner sues a subsequent purchaser and claims a due process violation.[32] The limitations period is only "irrelevant" if the owner establishes that she failed to gain notice of the sale during that period. The limitations period represents a time within which an owner with notice of another's claim to the property may exercise legal rights of recovery against that party without the aid of equity. Notice of the default judgment or subsequent purchase within the limitations period will defeat a claim brought against the subsequent purchaser to recover property lost at a tax sale due to a due process violation.

Thompson moved for summary judgment in this case based on such notice. We conclude, however, that the summary judgment record does not establish the date that Landry obtained notice of Thompson's claim to ownership of the property or of the default judgment. Landry acknowledged that she and her husband lived on the property during the entire course of these events and paid rent at some point, but the

---

[30] *See LaSalle Bank Nat'l Ass'n v. White*, 246 S.W.3d 616, 619 (Tex. 2007) ("By definition, equitable remedies apply only when there is no remedy at law . . . .").

[31] 649 S.W.3d at 197.

[32] 704 S.W.3d at 33 (quoting *Mitchell*, 649 S.W.3d at 194).

11

lease proffered as summary judgment evidence is dated August 3, 2009—outside of the two-year limitations period that began to run on February 9, 2007, with the recording of the constable's deed.[33] Accordingly, we leave resolution of the date of Landry's notice of Thompson's claim to the property to the factfinder.

## IV

We now turn to whether a subsequent purchaser may raise equitable defenses in a suit by a former owner even in cases in which the owner does not receive notice of the competing claim to the property until after limitations expires. Thompson primarily relies on a laches defense. We have generally described the essential elements of laches as "(1) unreasonable delay by one having legal or equitable rights in asserting them; and (2) a good faith change of position by another to his detriment because of the delay."[34]

The court of appeals declined to resolve whether an equitable defense is available in this case, distinguishing *In re E.R.* as a case

---

[33] Tex. Tax Code § 33.54.

[34] *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex. 1989). This court has defined laches as "not mere delay but delay that works a disadvantage to another." *Culver v. Pickens*, 176 S.W.2d 167, 170 (Tex. 1943) (quoting *Ross' Est. v. Abrams*, 239 S.W. 705, 709 (Tex. App.—San Antonio 1922), *aff'd*, 250 S.W. 1019 (Tex. Comm'n App. 1923, judgm't adopted)). When a party that knows its rights and "takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced," delay is deemed inequitable and operates as estoppel against enforcement of the right. *Id.* at 170–71.

involving the parent–child relationship and emphasizing that this Court left the question open in *Mitchell*.[35]

In *E.R.*, this Court considered the issue of equitable defenses to a due process challenge to a default judgment in the parental rights context.[36] We held that service by publication was invalid in that case, and thus the statutory six-month deadline to challenge the termination of parental rights did not bar the parent's collateral attack.[37] But we noted that equitable relief may not be available when a parent, knowing of the judgment, "unreasonably stands mute" while another party substantially relies on the judgment.[38] We turned to the Second Restatement of Judgments to explain the "bounds" of such a collateral attack:

> [A] party may not challenge an invalid default judgment if, (1) after receiving actual notice of the judgment, she manifested an intention to treat the judgment as valid; and (2) granting relief would impair another person's substantial interest of reliance on the judgment.[39]

The record in *E.R.* did not reveal when the parent learned of the termination order, and thus our Court remanded the notice issue.[40]

---

[35] 704 S.W.3d at 36.

[36] 385 S.W.3d at 555.

[37] *Id.* at 566.

[38] *Id.* at 569.

[39] *Id.* at 567 (quoting Restatement (Second) of Judgments § 66 (Am. L. Inst. 1982)).

[40] *Id.* at 569.

Later, in *Mitchell*, we took "no position on whether laches or any other equitable doctrine can provide a valid defense to a notice-based collateral attack on a judgment transferring property."[41] Crucially, the record in *Mitchell* was devoid of information regarding the timing and character of any notice of divestment, and thus we remanded the issue regarding the application of *E.R.* for further development.[42]

We hold that a subsequent purchaser may raise equitable defenses based on a former owner's notice of the default judgment or the subsequent purchaser's competing title to the property. The defense we described in *E.R.* applies with equal force in cases like this one, when a party aggrieved by a due process violation receives notice of it after limitations runs but conforms their conduct accordingly.[43] Landry filed suit eleven years after the default judgment. Thompson adduced summary judgment evidence in the form of the lease and Landry's testimony that she was aware her husband was paying rent, some evidence of conforming conduct. During the intervening years, Thompson paid the taxes on the property; Landry did not. A party adversely affected by a void judgment may not unreasonably stand mute in circumstances in which a party claiming title would deny the judgment's effect. As in *E.R.*, however, the record does not reveal the date of Landry's notice. Because the record does not establish the timing of Landry's notice of Thompson's claim to the property, the court of

---

[41] 649 S.W.3d at 196.

[42] *Id.* at 197.

[43] *See* 385 S.W.3d at 569.

appeals properly remanded Thompson's equitable defenses for consideration on remand.

*    *    *

Notice during the limitations period that property has been sold to satisfy a tax default judgment defeats an action against the purchaser to recover the property brought outside the limitations period. In such cases, the aggrieved owner has notice of the harm resulting from any constitutional violation and an adequate legal remedy. Equitable defenses are also available to a subsequent purchaser when the former owner obtains notice of the purchaser's title to the property outside the limitations period but unreasonably delays in seeking relief to the detriment of the purchaser. In this case, however, the subsequent purchaser has not conclusively established an equitable defense. Accordingly, we affirm the judgment of the court of appeals and remand the case to the trial court for further proceedings in accordance with this opinion.

Jane N. Bland
Justice

**OPINION DELIVERED:** May 9, 2025